It's still almost morning. The Hanover Insurance Company v. Urban Outfitters,INC, number 14-3705. Ms. Rosenberg? Mr. Rosenberg, I'm sorry. Mr. Rosenberg, I'm here on behalf of Urban Outfitters in case you had any questions specifically for her. Okay. And how do I pronounce your last name? Gologwi, Your Honor. Gologwi. Okay. Take your time. Thank you. I would like to reserve five minutes for rebuttal, please. You certainly may. May it please the court, Yvonne Rosenberg on behalf of One Beacon American Insurance Company and also on behalf of the Urban Outfitters entities in this case. We submit to the court that reversal of the judgment of the district court is appropriate in this case and compelled by two of this court's precedents. First, the Frog Switch case, and second, the Air Products case. The issue in this case is whether the allegations in an underlying complaint by the Navajo Nation against multiple Urban Outfitters entities, five in all, all separate and distinct legal entities, and all individually insured by both One Beacon and Hanover in sequential policies, misappropriated advertising activities. The claim was that the infringement took place on March 16, 2009. Is that correct? Again, the allegations are twofold. First, as far as trademark infringement, the Navajo Nation alleges that the Urban Outfitters defendants collectively began misappropriating their trademark in March of 2009 and thereafter until the filing of the complaint. The complaint also alleges, independent of the trademark infringement, that Urban Outfitters, or the defendant as it's named in the underlying complaint, misappropriated Native American Navajo styles, designs, prints, motifs in their advertising. And that began in 2009, according to the complaint, and continued until the filing of the complaint in multiple forms on multiple products using diverse advertisements, which we can see because they are attached as exhibits to the complaint. The Navajo Nation plaintiffs do not allege, and under principles of construction for purposes of the duty to defend, should not be read to allege, that the advertisements that we see that purportedly misappropriate the Native American designs, styles, patterns, motifs are continuously repetitions of others that were previously published. In fact, what we see are only advertisements that were published in 2011 and 2012 when Hanover insured One Beacon. I'm sorry, when Hanover insured the Urban Outfitters entities. Right, because you were the second. We were the first. One Beacon was first. Hanover was the second. Correct. One Beacon was the first. Correct. What we see from these advertisements is that they are all different. And they are all substantially different in that they depict different items. They depict different patterns. They depict different styles. So you're relying on what, Taco Bell, that this is somehow separate to it? Correct. And not only on Taco Bell, but also on this court's precedent in CRR, where the court said that what we have to look to is whether the complaint alleges diverse, different injuries. Let's spend a minute on Taco Bell, if you could. Absolutely. Go for it. Because your opponent says that that's distinguishable because it was clearly a different idea, if that's the right term. But help me get through all of that. Certainly. Well, we have no feisty chihuahua in this case. We have no common, identical idea that runs from advertisement to advertisement, at least not one that we can see from the allegations of the complaint or from the exhibits to the complaint. So what did the district court say the idea was? The district court said that the only idea was the trademark, the Navajo trademark, and that because all subsequent advertisements use the Navajo trademark, whether directly or through use of what the district court said were similar words, like Native American or tribal, then the prior publication exclusion undoubtedly applied in this case and Hanover did not have a duty to defend. Now, we submit that on the face of the complaint, neither tribal nor Native American nor perhaps Cherokee or Hopi are identical or even remotely similar to the Navajo trademark, though they are indications of origin, which, according to this circuit's precedent in the frog switch, qualify, certainly meet the definition, as well as under Sorby, which is the superior court's opinion, of what constitutes an advertising idea. Now, it very well may be that at the end of the day, all of the advertisements that are identified in this complaint and dated 2011 and 2012 were originally published in 2010 or in 2009, but we can't make that determination from the complaint. And, in fact, every single case that the court has addressed in which the court has found that the prior publication exclusion applies, it has done so on the basis that it is able to ascertain the original publication, the initial publication is a point of reference. If we accept, as the Navajo Nation pleads and we're required to do, under principles guiding the duty to defend, that each one of these items constitutes a separate violation and misappropriation of the Navajo Nation's advertising ideas, and the Navajo Nation specifically pleads that there are multiple advertising ideas that were misappropriated by the Urban Outfitters entities, then we must have a point of reference to make a determination as to whether all of those ideas were, in fact, first published in 2009 or not. And if the answer to that is that may be or it may not be, then under this circuit's precedent in air products and extensive precedent under Pennsylvania law, it's the insurer in this particular case, Hanna, whether it carries the burden or shoulders the burden of proof that the exclusion conclusively applies. Now, the problem is Pennsylvania law seems to say unambiguously that in determining whether a claim is covered or excluded, we have to treat the allegations in the complaint as true. What do we do with that? I mean, they're saying that something began in March of 2009 under one beacon's time and it doesn't, you know, it started then, it continues. Well, reverting to Taco Bell, Judge Iambro, the situation is just the same here. The allegations in the complaint also allege, I'm sorry, the Navajo Nation also alleges in the complaint that certain lines of items, certain products were never put into the market until 2011. Certainly, if those new advertisements contained new patterns that were never used before, then that would be the first instance in which those advertising ideas would have been misappropriated. And the complaint undoubtedly says that new products came out in 2011. Is it the prints that are being put out that they're saying are taking something away from, or the use of the name Navajo, for example? They're alleging both. And beyond that, they're using motifs, for instance, certain stones, aquamarine, for example, or the use of leather and tassels. The complaint is not sufficiently specific for us to identify what all of these advertising ideas are, beyond the fact that the underlying complaint specifically says there are multiple advertising ideas, they were misappropriated over the course of time, and we don't have the point of reference to make a determination on the face of the complaint about whether, for instance, all of these advertisements that are attached to the complaint and are part of the complaint are actually repetitions, whether they be identical or substantially similar to older advertisements or older misappropriations that the Navajo Nation claims took place. Now, if the complaint does not allege a separate tort or any kind of separate torts, then what are we supposed to do? Well, a complaint specifically refers to each one of these acts of misappropriation as separate violations. But it doesn't say, it basically says it's a continuing violation. Isn't that correct? Well, what it actually alleges is that there's a course of conduct, but the course of conduct does not necessarily translate into a continuous violation. I can commit various misappropriations of various different ideas over the course of time without it being a single, for instance, in the case of disparagement, it's easy to tell where the disparagement, where someone is disparaging somebody, continuing over time, it being a similar statement. However, not so where we have to identify individual identifiable designs that would apply to each one of these items that are used in the advertising of the items themselves. I believe I am out of time. Let me forward you back on rebuttal then. Thank you very much. Thank you. Mr. Gologly. Thank you. May it please the Court. Andrew Gologly for Hanover Insurance Company. The one thing that I just get to the crux of my concern is that there's some troubling aspects of the argument that you've made, and the first is that the Navajo Nation complaint offers no facts in support of its assertion that the injurious conduct began on March 16, 2009. Well, Your Honor, if I may. Go ahead. They've actually repeatedly said that that is the factual allegation. That's the allegation. What supports that? We have to assume it's true for purposes of determining an insurer's duty to defend. Presumably they have some support for that allegation, and they suspect it was probably before March 9th of whatever date they offer. They basically indicate it was March of 2009, if not earlier, that these people started doing these bad things, and there are basically two common themes, using the Navajo name, spelled either with an H or a J in it, or basically passing off their products as fake Indian products by using various motifs and designs that people associate with Native Americans. Throughout the time frame from March of 2009 until the suit was filed in 2012, it's claimed one set of causes of action, trademark infringement, trademark dilution, violations of the Indian Arts and Crafts Act, and unfair competition. There's no suggestion that after Hanover's policy took effect on July 7, 2010, some new cause of action was created. This is a course of conduct. But what happens if that March 16th date of 2009 turns out to be inaccurate? It has no bearing on the duty to defend your arm. That may be something that is established at trial. It could be February of 2009. But isn't the duty to defend broader than the duty to identify? The duty to defend can be broader than the duty to indemnify your arm. The duty to defend is governed exclusively by the factual allegations of the complaint that's filed against the insured and the actual complaint that's filed, not a lawsuit that could have been filed or might have been filed, but the suit that was filed. And in this case, you can't get much clearer than this. How many defendants were there here? Was it five? I'm not entirely sure. I think if we look at the caption here, there were Urban Outfitters, there was FreePeople.com, Anthropology, and then various variations on Free People, Anthropology. It sounds like the complaint is that whatever happened, let's just pick any date you want to pick, that it was all five did the same thing on the same date. Clearly, that's what the complaint affirms. Well, it's basically saying that by whatever was March of 2009, all of them had started doing it. It doesn't necessarily say they all did it on the same day. But at least as early as March of 2009, every one of these companies began marketing its goods in this manner. And that's the nature of the allegation that governs the defense obligation of the insurer, the advertisements that were affixed to the complaint. At some point, a complaint has to be plausible. You mean all five did the exact same thing on the same day? It doesn't say that, Your Honor. It basically says that all five had started doing this by March of 2009, if not sooner. It doesn't say they all did it on the same day. This isn't a situation where someone is sued for negligently shooting someone 16 times. There is a limit to plausibility, I agree. But in this instance, there's nothing implausible about the allegation that's been made that they started doing this in March of 2009 and kept doing it until 2012, spanning both insurer's policy periods. This is not a situation where Urban Outfitters defendants are left uninsured. They're being insured by the company that insured them when this began, and for about a year and a half as it continued forward. Isn't the test that is whether it's possible that something could have happened on your watch, on Hanover's policy period? Your Honor, no. And two reasons for that. One of them being we don't, based on the allegations, something did happen during our policy period. This course of conduct continued that had begun a year and a half earlier. So we don't dispute that. We don't dispute that there was personal advertising injury of some kind that occurred during our policy period. We're saying the coverage is excluded based on the prior publication exclusion, which basically puts a lid on our exposure for events that had already started before we underwrote the risk. Why isn't this similar to Taco Bell? Well, in Taco Bell, Your Honor, my understanding is that there were two separate advertising ideas that were distinct, one of them being a psycho chihuahua, and the other was a chihuahua poking its head out of a hole or something. I'm not quite sure that I understand fully the ramifications of the distinctions between the concepts, but they found a clear distinction versus, for example, whether you put a teepee on mittens or put it on a skirt. I mean, the substance of these advertisements was all the same throughout the period, and that's the crucial test. The OMB can continue to argue, despite Third Circuit authority directly to the contrary. I wasn't the substance of the items in Taco Bell, essentially, which was the use of the chihuahua. I'm sorry, Your Honor? Why? I mean, was Taco Bell wrongly decided then? It seems to me that the basic idea there was the use of the chihuahua. Well, that's not the way the court put it. I don't understand that. The court drew a distinction there, and in that sense, I'm not sure that I buy it, but the Taco Bell decision is a lot more consistent with our position overall than it is with theirs. They've continued to advance the proposition that for a prior publication exclusion to apply, that the pre-policy and post-policy communications had to be identical. They cite a Western District of Pennsylvania case that doesn't cite any authority for that, and yet they still base much of their argument on Taco Bell, which rejected that very argument. Taco Bell's been cited with approval in this court, and I don't see it as inconsistent. I'm just not quite sure I understand how they drew the line between the chihuahuas. Well, Taco Bell cited two dates, and this complaint cites only one date. Is that the difference? Well, that would be another distinction. An appropriate difference? I think it is, Your Honor, but, again, I guess I'm hung up on the chihuahuas. I never quite understood how they were drawing the line there. I have a seat for Norris myself. Some of the cases talk about the purpose behind this rule is that once you've taken offensive action, you shouldn't be able to buy insurance to cover you after the act, but that wasn't the case in this particular matter, was it? I mean, they already had insurance. They had insurance with one company, and then they went to another company. So I think the same principle is involved. It's not a matter of we're not suggesting that Urban Outfitters knew what they were doing was illegal in 2009, so it's not going to be the measure of their liability, but still there was a course of conduct that began roughly a year and a half before Hanover went on the risk, and that changes the fundamental nature of insurance, which is sort of a risk-shifting function. It's a gamble, and it's not gambling anymore when one side already knows what the answer is, and this course of conduct had been ongoing for quite some period of time before Hanover came into the picture. One of the reasons they have this limitation is because under coverage B with personal advertising injury, unlike coverage A where you're dealing with occurrences, coverage A you have a body of case law that determines how many occurrences there were, when they occur, and so on. You don't have that under coverage B. This places some limitation upon an insurer's liability, so you don't just stack policy after policy after policy if this goes on for 20 years. When your company was engaged, was Urban Outfitters on notice that they were transgressing? Your Honor, not to my knowledge. This suit was filed in 2012. Hanover's coverage took effect July 7, 2010, two years before the suit was filed. Whether or not Urban Outfitters knew they were doing anything wrong by this, I have no idea, and that's not really the point of our argument. When you look at the Indian Arts and Crafts claim, there were allegations of two advertisements, and you look at them, they claim they're substantially similar, but when you look at them, they're dramatically different products with different Native American designs. Isn't that really a separate tort? No, Your Honor, it's a continuing tort, and you may have additional damages. Every time during this period from 2009 to 2012, say, every time the defendants advertised a product, whether it was mittens, handbags, skirt scarves, whatever, and added more products, you're creating additional damages to the Navajo Nation by doing so. You're not creating additional torts, and there's no allegation here that that's so. The substance of the advertisements is all the same, and it either uses the Navajo name improperly or implies to purchasers that they may be buying genuine Indian goods that were made in Korea or whatever. But aren't those two different theories? Well, they're two different products, I think is what we're talking about, and the courts have pretty uniformly rejected the notion that a prior publication exclusion is inapplicable simply because different products are involved. Again, the street surfing case, and that was actually one housekeeping matter I wanted to mention before I forgot, and I forgot it anyway. We cited a decision from I think it was the Ninth Circuit Court of Appeals in street surfing, and in November they filed an amended opinion. It still contains all the good stuff in it that the first one did, but the citation has changed, and the current site is 776 F3rd 603. I didn't want to forget to mention that. Very good. Essentially, in this case, the defendant's conduct, whether it was using the Navajo name or using a variety of different Native American symbols, was wrongful for the same reasons throughout the time period involved, or reasons, trademark infringement or dilution, Indian Arts and Crafts Act violations, unfair competition. Those reasons didn't change when Hannaver's coverage took effect in July of 2010, and there's no suggestion they changed at any time before or after that occurred. And the communications were substantially similar in content, regardless of what symbols you're talking about. The gist of the case is the same before and after the policy period, and we submitted under Third Circuit authority and even under Taco Bell that Judge O'Neill was entirely correct. Is that the key response in your instance, wrongful for the same reason? Right. Yes, Your Honor. I think the street surfing talks about that. Thank you very much. Thank you. Mr. Rosenberg. Thank you. Let me just go through a few issues here. First, I do want to mention that Ms. Hickock is here on behalf of the Urban Outfitters entities, in the event that there are any questions that are specifically directed to Urban Outfitters. I do want to note that as Judge Amber was inquiring earlier, there are five individual Urban Outfitters entities that are named in this complaint, even though the complaint just uses the generic term defendant. The complaint uses the generic term defendant because in paragraphs 18 and 19 of the underlying complaint, the Navajo Nation makes the legal conclusion that these are all alter egos. There is no statement as to any individual action by any individual defendant because the Navajo Nation claims they're alter egos of each other. It does so based on an SEC statement that identifies all entities. And statements concerning alter ego in complaints are not allegations of fact. They're conclusions of law, which the court not only is not required to accept, but frankly in the context of evaluating the duty to defend, should read as not being the same entity. So each of these entities is independently insured, correct? Each of these entities is insured as an independent entity. That is correct. But insured by? By the same companies, just identified as a separate insured. So both One Beacon and Hanover have these entities identified separately in their policies, is my recollection. In addition to that, Taco Bell says that it doesn't matter if the Navajo Nation is right when it claims that each one of these designs is an independent advertising idea. What matters is that it pleads and seeks relief for each one of those violations or alleged violations. In fact, in Taco Bell, Judge Posner specifically said, who knows if they can recover for this claim? But yes, at the end of the day, it's very similar to this case in that they're saying, well, they took our ideas. And that's what the Navajo Nation says here. And they took our ideas in Taco Bell because they not only misappropriated the feisty chihuahua, but the feisty chihuahua head where the screen closes in on the chihuahua head. Now, are there similarities? Probably. But is it alleged as a separate misappropriation? Yes, that's what Judge Posner found. And that's exactly what we have in this case. When we look no further than the exhibit still has alleged as a separate violation or a separate tort. It is identified. Each one is identified as a separate violation and redress is sought for each one of these products. Even though there may be one cause of action or one count for relief, it's a count of relief that seeks redress for each and every one of these misappropriations. Certainly they embody the trade dress of different Native American tribes. Certainly it embodies, in a sense or certainly from the perspective of the Navajo Nation, the spirit of the Navajo Nation. It uses different products. It uses different items. It's jewelry. It's feathers. It's patterns. As far as the date on which I believe, Judge Sirica, you asked when the Urban Outfitters entities were put on notice of this. It was in 2011 that the Navajo Nation sent a cease and desist letter. And finally, I just want to bring this down in terms of the advertising idea to the notion that the Coca-Cola Company owns Coke, they own Fanta, they own Sprite. If somebody were to misappropriate the imagery of Fanta, the orange and white and green, or the red and white for Coke, or the green and blue and yellow for Sprite, each one of those would be a separate misappropriation of an advertising idea. So too in the context of the Navajo Nation. The Navajo Nation claims that each of these patterns is its proprietary design. Each of these patterns evokes a relationship with the Navajo Nation. Finally, on the street surfing matter, once again, I come back to my initial point, and that is we cannot evaluate whether the prior publication exclusion applies unless we know that there is a repetition of the violation. If we do not have advertisements that misappropriate the imagery, the iconography, the patterns, designs, styles of the Navajo Nation to compare in 2009 with those that took place after Hanover's policy incepted, there is no way we can say with any degree of certainty that these claims are excluded. And until that happens, the duty to defend remains in place. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement and call a five-minute recess before I let you go.